**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **P.G., on behalf of C.B.,** | : | **CIVIL ACTION NO. 1:04-CV-2221** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SOUTHERN YORK COUNTY** | : | |
| **SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the court is the motion for summary judgment or, in the

alternative, disposition on the administrative record (Doc. 43), filed by defendant,

Southern York County School District ("School District").  The School District

contends that the action *sub judice* is precluded by a prior decision of the

Pennsylvania Commonwealth Court.  For the reasons that follow, the motion will be

granted.

I.    **Statement of Facts**[1]

C.B. is a seventeen-year-old student who resides in the School District.

(Docs. 44 ¶ 1; 54 ¶ 1.)  C.B. is eligible to receive special education and related

services pursuant to the Individuals with Disabilities Education Act ("IDEA"),

---

[1] In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to plaintiff, the
non-moving party.  See infra Part II.

20 U.S.C. §§ 1400-1491o,[2] because he has "a Specific Learning Disability in the areas of reading and written expression." (Docs. 44 ¶ 2; 54 ¶ 2.)

C.B.'s challenges in the areas of speech and language first became apparent during his kindergarten year in the School District.  A multi-disciplinary evaluation conducted during that year concluded that an Individualized Education Program ("IEP")[3] was needed to provide speech and language support for C.B.  (Docs. 44 ¶¶ 3-4; 54 ¶¶ 3-4.)  In addition, a psychological evaluation revealed that C.B. had an I.Q. of 65, which classified him as mentally retarded.  (Docs. 54 ¶ 5; 45, Ex. E at 3.) Yet, C.B.'s achievement test scores were higher than would typically be expected for someone with mental retardation.  (Doc. 45, Ex. K at 345.)

More than five years later, a second psychological evaluation increased C.B.'s I.Q. score to 76.  (Docs. 44 ¶ 6; 54 ¶ 6.)  Despite this increase and C.B.'s achievement test scores, C.B. remained eligible for "continuing services as a Mentally Retarded student." (Doc. 45, Ex. F at 4.)  In June 2002, the School District conducted a third

---

[2] The IDEA requires states to provide disabled students with a free appropriate public education ("FAPE") that "emphasizes special education and related services designed to meet [the students'] unique needs and prepare them for employment and independent living." Id. § 1412(a)(1).  To satisfy this obligation, a state must conduct "a full and individual initial evaluation" of the student and provide him or her with an Individualized Education Program ("IEP"). Id. § 1414(a)(1)(A).

[3] An IEP is a detailed instruction plan that is tailored to address the student's specific educational needs. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995).  It consists of "a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988).

evaluation of C.B., which increased his I.Q. to 88.  (Docs. 44 ¶ 7; 54 ¶ 7.)  This

increase changed C.B.'s disability category from "Mental Retardation" to "Specific

Learning Disability" in the area of written language and expression.[4]  (Docs. 44 ¶ 8;

54 ¶ 8.)  As a result, C.B.'s IEP for the 2002-2003 school year was amended to

provide additional support in the areas of "oral and written communication skills,

reading, and academic skills."  (Docs. 44 ¶ 9; 54 ¶ 9.)  C.B.'s mother, P.G., approved

this IEP, but now denies that the reading and written expression goals were

appropriate.  (Docs. 44 ¶ 11; 54 ¶¶ 11, 35.)

Five months later, P.G. obtained an Independent Educational Evaluation of

C.B.  (Docs. 44 ¶ 12; 54 ¶ 12.)  This evaluation concluded that C.B. had a "language-

based learning disability of the Dyslexic Type" and that C.B. should be placed in an

"intensively, remedial, private school setting with a full day program geared to meet

the needs of" such a student.  (Doc. 45, Ex. J at 30, 32.)  The evaluation also

concluded that C.B.'s initial diagnosis of mental retardation was improper and that

the steady increases in C.B.'s I.Q. score should have revealed this error in diagnosis.

(Doc. 54 ¶ 46.)

Soon thereafter, the School District developed C.B.'s IEP for the 2003-2004

school year.  (Docs. 44 ¶¶ 13-14; 54 ¶¶ 13-14.)  This IEP continued to provide C.B.

with support in the areas of "reading and written expression" and prescribed

several methods of instruction to be conducted in a "one-to-one and small group"

---

[4] The evaluation did not reveal a "language-based learning disorder of the
dyslexic type." (Doc. 45, Ex. K at 79.)

setting.  (Docs. 44 ¶ 15; 45, Ex. L at 10; 54 ¶ 15.)  P.G. rejected this IEP as inadequate,

arguing that it contained only vague, "boilerplate" instructions that "failed to give

guidance to [C.B.'s] teacher."  (Doc. 54 ¶¶ 15, 19, 36.)  P.G. also claimed that private

school instruction was necessary to bridge "the deficit between [C.B.'s] current

level and his ability."  (Doc. 54 ¶ 19.)  The School District refuted this, maintaining

that it could provide a program appropriate for C.B.'s needs.  (Docs. 44 ¶ 20; 54 ¶

20.)

At P.G.'s request, a due process hearing was commenced before a Hearing

Officer.  (Docs. 44 ¶¶ 19, 21; 54 ¶¶ 19, 21.)  The Hearing Officer considered whether

C.B.'s IEPs for the 2002-2003 and 2003-2004 school years were adequate and

whether C.B. should be placed in a private school for the remainder of the 2003-

2004 school year.  (Docs. 44 ¶ 21; 54 ¶ 21.)  The Hearing Officer concluded that the

"reading components" of C.B.'s IEPs were inadequate to meet his needs.  (Doc. 45,

Ex. A at 30.)  Accordingly, the Hearing Officer determined that the School District

had failed to provide C.B. with a free appropriate public education ("FAPE"), and

awarded him 230 hours of compensatory education.[5]  (Doc. 45, Ex. A at 30-31.)

However, the Hearing Officer declined to award private school tuition

---

[5] Compensatory education is an appropriate equitable remedy only when a
school district has failed to provide a student with a FAPE.  Lester H. v. Gilhool,
916 F.2d 865, 871-73 (3d Cir. 1990).  Its purpose is to replace those educational
services lost because of the school district's failure.

reimbursement,[6] citing the lack of evidence that the private school program was the least restrictive[7] placement available.  (Doc. 45, Ex. A at 3.)

Both parties filed exceptions to the Hearing Officer's recommendations, which were heard by the Special Education Due Process Appeals Review Panel ("Appeals Panel").  (Docs. 44 ¶ 23; 54 ¶ 23.)  The Appeals Panel affirmed the Hearing Officer's decision, but increased the amount of compensatory education awarded to 540 hours.  (Docs. 44 ¶ 24; 54 ¶ 24.)  The Appeals Panel concluded that this increase in compensatory education was needed to allow C.B. to make up for "the years of lack of appropriate, intensified, remedial instruction and lack of concomitant progress."  (Doc. 54 ¶ 24.)

On May 14, 2004, the School District filed a petition for review with the Commonwealth Court of Pennsylvania,[8] seeking review of the Appeals Panel's

---

[6] Tuition reimbursement is an appropriate remedy when: (1) a school district has failed to provide a student with a FAPE, and (2) placement in a private school is "proper under the [IDEA]."  Florence County Sch. Dist. v. Carter, 510 U.S. 7, 15 (1993).  A private school placement is proper under the IDEA if "the education provided by the private school is reasonably calculated to enable the child to receive educational benefits."  Id. at 11.

[7] The IDEA requires that students be educated in the "[l]east restrictive environment," which typically means instruction with "children who are not disabled" in "the regular educational environment."  20 U.S.C. § 1412(5)(A). Removal from this environment should occur "only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  Id.

[8] Review of an Appeals Panel decision may be sought by filing suit in either "any State court of competent jurisdiction or in a district court of the United States."  20 U.S.C. § 1415(i)(2)(A).

decision.  (Docs. 44 ¶ 25; 54 ¶ 25.)  On June 21, 2004, P.G. attempted to remove the

case to this court; however, the case was remanded to Commonwealth Court

because P.G.'s attempted removal was untimely.  (Docs. 44 ¶¶ 26-28; 54 ¶¶ 26-28;

Civil Action No. 1:04-CV-01333, Doc. 19.)

On October 7, 2004, P.G. initiated the action *sub judice* seeking review under

the IDEA of the same administrative decisions that were at issue in the

Commonwealth Court.  (Docs. 44 ¶ 29; 54 ¶ 29.)  P.G. added claims under § 504 of the

Rehabilitation Act, 29 U.S.C. §§ 790-794e, the Americans with Disabilities Act,

42 U.S.C. §§ 12131-12134, and § 1983 of the Civil Rights Act, 42 U.S.C. § 1983.  Each

of these claims relies "on the same core of operative facts" as P.G.'s IDEA claim.

(Docs. 44 ¶ 30; 54 ¶ 30.)  On December 14, 2004, the School District filed a motion to

dismiss the instant action, arguing that this court should abstain from exercising

jurisdiction because of the parallel action pending in Commonwealth Court.  (Docs.

44 ¶ 31; 54 ¶ 31.)  The order of court dated March 30, 2005 denied the motion

because the Commonwealth Court had not yet entered judgment on the pending

claims.[9]  (See Doc. 27 at 1.)

On July 13, 2005, the Commonwealth Court reversed the Appeals Panel's

decision, holding that the School District had provided C.B. with a FAPE and that,

as a result, he was not entitled to compensatory education.  (Docs. 44 ¶ 32; 54 ¶ 32.)

---

[9] The court's decision on the issue of abstention was also based, in part, on
the fact that the instant action raised several claims that had not been raised in
Commonwealth Court.  (Docs. 27 at 1; 54 ¶ 31.)

P.G. filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, but it was denied on July 26, 2006.  (Docs. 44 ¶ 33; 54 ¶ 33; 60.)

Defendant filed the instant motion for summary judgment or, in the alternative, disposition on the administrative record, in which defendant alleges that the action *sub judice* is precluded by the prior decision of the Commonwealth Court.  This motion has been fully briefed and is ripe for disposition.

## II.    Standard of Review[10]

Through summary judgment the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

---

[10] If the court were conducting a substantive review of the Appeals Panel's decision in this case, it would be required to use a "modified *de novo*" standard of review.  L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006) (describing the standard of review to be used in IDEA cases).  In the instant case, collateral estoppel prevents the court from conducting a substantive analysis of plaintiff's claims.  See infra Part III.  Therefore, the summary judgment standard will be used.

also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.    Discussion

When similar actions are pending in both state and federal courts, the

general rule is that both actions "may proceed until one has come to judgment, at

which point that judgment may create" a preclusive effect on the other action.

Univ. of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991).  When

the case *sub judice* was filed, a similar action was pending before the

Commonwealth Court of Pennsylvania.  On July 13, 2005, the Commonwealth Court

action came to judgment.  This court must now determine the preclusive effect to

be given that judgment.

The Full Faith and Credit Act, 28 U.S.C. § 1738,[11] requires a district court to

"give the same preclusive effect to a state-court judgment as another court of that

---

[11] 28 U.S.C. § 1738 provides in pertinent part:

The records and judicial proceedings of any court of any . . . State, Territory
or Possession [of the United States], or copies thereof, shall be proved or
admitted in other courts within the United States and its Territories and
Possessions by the attestation of the clerk and seal of the court annexed, if a
seal exists, together with a certificate of a judge of the court that the said
attestation is in proper form.

Such . . . records and judicial proceedings or copies thereof, so authenticated,
shall have the same full faith and credit in every court within the United
States and its Territories and Possessions as they have by law or usage in the
courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

State would." <u>Parsons Steel Inc. v. First Ala. Bank</u>, 474 U.S. 518, 523 (1986).  In so

doing, federal courts may not "employ their own rules," but must "accept the rules

chosen by the State from which the judgment is taken."  <u>Matsushita Elec. Indus. Co.</u>

<u>v. Epstein</u>, 516 U.S. 367, 373 (1996).  Accordingly, this court must look to

Pennsylvania law to determine the preclusive effect to be given to the

Commonwealth Court's judgment.

In Pennsylvania, the doctrine of collateral estoppel[12] "operates to prevent a

question of law or an issue of fact which has once been litigated and adjudicated

finally in a court of competent jurisdiction from being relitigated in a subsequent

suit."  <u>Snyder v. Specialty Glass Products, Inc.</u>, 658 A.2d 366, 372 (Pa. Super. Ct.

1995).  Collateral estoppel applies when:

> "(1) the issue decided in the prior case is identical to the one presented
> in the later action; (2) there was a final adjudication on the merits; (3) the
> party against whom the plea is asserted was a party . . . in the prior case;
> (4) the party . . . against whom the doctrine is asserted had a full and fair
> opportunity to litigate the issue in the prior proceeding; and (5) the
> determination in the prior proceeding was essential to the judgment."

<u>Office of Disciplinary Counsel v. Kiesewetter</u>, 889 A.2d 47, 50-51 (Pa. 2005); <u>see also</u>

<u>Rutter v. Rivera</u>, 74 F. App'x. 182, 187 (3d Cir. 2003); RESTATEMENT (SECOND) OF

JUDGMENTS § 27 (2006).

In the action *sub judice*, there can be no dispute that the parties in the state

and federal proceedings are the same or that the judgment of the Commonwealth

---

[12] Collateral estoppel is often referred to as issue preclusion.  <u>See, e.g.</u>, <u>Osiris</u>
<u>Enterprises v. Borough of Whitehall</u>, 398 F. Supp. 2d 400, 408 (W.D. Pa. 2005).

Court is final.[13]  The remaining requirements of collateral estoppel will be discussed

in turn.

**A.     Same Issue**

In order for collateral estoppel to apply, the issue must be one that was

"actually litigated in the prior action."  Stidham v. Millvale Sportsmen's Club,

618 A.2d 945, 954 (Pa. Super. Ct. 1992).  In the instant action, P.G. seeks review

under the IDEA of the same administrative decisions that were actually litigated in

the Commonwealth Court.  (Docs. 44 ¶ 29; 54 ¶ 29.)  Clearly, P.G.'s IDEA claims are

precluded by the doctrine of collateral estoppel and cannot be considered by this

court.

Nevertheless, P.G. asserts that the instant case is not precluded by collateral

estoppel because she has raised additional claims under § 504 of the Rehabilitation

---

[13] In Pennsylvania, a judgment is deemed final for purposes of collateral estoppel "unless or until it is reversed on appeal."  Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996); see also Rutter, 74 F. App'x at 187.  There has been no reversal of the Commonwealth Court's ruling in this matter.  Therefore, the judgment is final for purposes of collateral estoppel.

Act,[14] the Americans with Disabilities Act ("ADA"),[15] and § 1983 of the Civil Rights

Act.[16]  However, these claims rely "on the same core of operative facts" as P.G.'s

IDEA claim, and each claim turns on the exact issue decided by the Commonwealth

Court, namely, whether the School District provided C.B. with a FAPE.  (See Docs.

---

[14] Unlike the IDEA, which sets forth an affirmative duty to provide an appropriate education to disabled students, § 504 of the Rehabilitation Act is a "negative prohibition against disability discrimination in federally funded programs." W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995).  However, "[t]here appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." Id. at 492-93; see also id. at 493 ("Indeed, the regulations implementing § 504 adopt the IDEA language, requiring that schools which receive or benefit from federal financial assistance 'shall provide a free appropriate public education to each qualified handicapped person . . . .'" (quoting 34 C.F.R. § 104.33(a))).

[15] The ADA is similar to the Rehabilitation Act, but it "extend[s] section 504's anti-discrimination principles to public entities." Helen L. v. DiDario, 46 F.3d 325, 332 (3d Cir. 1995); see also 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity." (emphasis added)).

[16] Section 1983 offers private citizens a means of redress for violations of federal law by state officials. See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ, 536 U.S. at 284-85; Kneipp, 95 F.3d at 1204.

44 ¶¶ 30, 32; 54 ¶¶ 30, 32.)  In order to find in favor of P.G. on any of the federal

claims, this court would be required to conclude, in direct contravention of the

Commonwealth Court's decision, that the School District failed to provide C.B. with

a FAPE.  This is just the sort of judicial infighting that the doctrine of collateral

estoppel was designed to prevent.

P.G. further suggests that she should be permitted to bring her federal claims

in federal court, so that she may take advantage of "the relative expertise" of the

federal forum in adjudicating these claims.  Migra v. Warren City Sch. Dist. Bd. of

Educ., 465 U.S. 75, 78 (1983).  However, preclusion law does not support such a

position.  To the contrary, preclusion law dictates that "it is more important to give

full faith and credit to state-court judgments than to ensure separate forums for

federal and state claims."  Id. at 84.  P.G. could have raised her federal claims in

Commonwealth Court, but she chose not to do so.  See, e.g., Jones v. Holvey, 29

F.3d 828, 831 (3d Cir. 1994) (permitting state courts to hear § 1983 claims); Vail v.

Harleysville Group, Inc., No. CIV.A.2002-CV-02933, 2002 WL 32172799, at *2 (E.D.

Pa. Sept. 30, 2003) (permitting state courts to hear ADA claims).  She should not be

rewarded for this failure.[17]

---

[17] The court further notes that P.G. could have avoided this result by
removing the Commonwealth Court case to this court within the 30-day period
required by 28 U.S.C. § 1446(b).  P.G. failed to do so and will not be allowed to
achieve an end-run around this failure.

Finally, P.G. alleges that because she seeks different relief[18] than that awarded in Commonwealth Court, collateral estoppel does not apply. However, preclusion law again fails to support this position. Where the issues in the two proceedings are the same, the fact that the relief that is sought in the second is "different from that sought or obtained in the first will not prevent the bar by collateral estoppel of the relitigation of the issue." Balsbaugh v. Zeck, 500 A.2d 208, 210 (Pa. Commw. Ct. 1985). Each remedy sought by P.G. again turns on the issue of whether the School District provided C.B. with a FAPE. Therefore, P.G.'s decision to seek different forms of relief has no effect on the application of collateral estoppel.

B.      **Essential to Judgment**

In order for collateral estoppel to apply, the disputed issue must have been essential to the first court's judgment. In this case, the issue of whether C.B. had been provided with a FAPE was clearly essential to the Commonwealth Court's decision. The issue lies at the heart of the Commonwealth Court's decision not to award C.B. compensatory education. (See Doc. 45, Ex. R.) Therefore, this element of collateral estoppel is satisfied.

---

[18] Specifically, P.G. seeks additional relief in the form of monetary damages, attorney's fees, expert witness fees, and compensatory education for a period greater than one year. (See Doc. 47 at 8-9.)

### C.   **Full and Fair Opportunity to Litigate**

Generally, an individual who was a party to the prior proceeding is deemed to have "had a full and fair opportunity to litigate the issue." Kiesewetter, 889 A.2d at 54. It is only when "state procedures fall below the minimum requirements of due process as defined by federal law," that a party has been denied a full and fair opportunity to litigate. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074 (3d Cir. 1990). None of P.G.'s allegations imply such a failure of due process,[19] and the court finds no such failure. Therefore, this element of collateral estoppel is also satisfied.

### IV.   **Conclusion**

Although the court sympathizes with P.G.'s concern over her child's educational progress, the court is bound by principles of collateral estoppel. The court defers to the Commonwealth Court's decision that the School District properly provided C.B. with a FAPE and that, as a result, C.B. is not entitled to compensatory education. (See Docs. 44 ¶ 32; 54 ¶ 32.) Such deference is necessary to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen v. McCurry, 449 U.S. 90, 96 (1980). Therefore, the court will grant the motion for summary judgment as to plaintiff's

---

[19] P.G. points out that she was not provided a jury trial in Commonwealth Court and that the Commonwealth Court employs a more deferential standard of review in IDEA cases than does this court. (See Doc. 47 at 9-10.) Neither of these allegations impinges upon P.G.'s due process rights.

claims under the IDEA, the ADA, § 504 of the Rehabilitation Act, and § 1983 of the

Civil Rights Act.

    An appropriate order will issue.


                                  S/ Christopher C. Conner
                                 CHRISTOPHER C. CONNER
                                 United States District Judge


Dated:       October 24, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **P.G., on behalf of C.B.,** | : | **CIVIL ACTION NO. 1:04-CV-2221** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SOUTHERN YORK COUNTY** | : | |
| **SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 24th day of October, 2006, upon consideration of defendant's

motion for summary judgment and disposition on the administrative record

(Doc. 43), and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that:

1.   Defendant's motion (Doc. 43) for summary judgment is GRANTED.
     See FED. R. CIV. P. 56(c).

2.   The Clerk of Court is directed to enter JUDGMENT against plaintiff
     and in favor of defendant Southern York County School District.

3.   The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge